# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

In re

SELICIA M. STOOKSBURY

Case No. 3:17-bk-33374-SHB
Chapter 7

Debtor

BRANDON R. STOOKSBURY

Plaintiff

v.

Adv. Proc. No. 3:18-ap-3011-SHB

SELICIA M. STOOKSBURY

Defendant

## M E M O R A N D U M

APPEARANCES:   MOSTOLLER, STULBERG & WHITFIELD
   Ann Mostoller, Esq.
   Hannah Tippett, Esq.
   136 South Illinois Ave.
   Suite 104
   Oak Ridge, Tennessee 37830
   Attorneys for Plaintiff

   FORRESTER, BURRELL & VARSALONA
   Sal W. Varsalona, Esq.
   Elizabeth M. Burrell, Esq.
   Post Office Box 398
   Clinton, Tennessee  37717
   Attorneys for Defendant

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the Court on the Complaint to Determine Dischargeability ("Complaint") filed on April 6, 2018 [Doc. 1], asking the Court to determine that marital debt owed to Plaintiff by Defendant is nondischargeable under 11 U.S.C. § 523(a)(15). Defendant filed her Answer on May 11, 2018 [Doc. 6], denying the allegations in the Complaint. Pursuant to the Joint Statement of Issues filed by the parties on September 4, 2018, the Court has been asked to determine whether any part or all of certain debts incurred by Plaintiff are nondischargeable under § 523(a)(15); whether the debts were reasonable; and whether Plaintiff is entitled to reimbursement of his attorney's fees incurred to prosecute this adversary proceeding. [Doc. 15.]

The trial of this adversary proceeding was held on September 13, 2018. The record before the Court consists of Joint Stipulation of Facts filed by the parties on September 4, 2018 [Doc. 15], six exhibits entered into evidence, and the testimony of Plaintiff. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

## I. FACTS

On September 1, 2017, the Anderson County Chancery Court awarded Plaintiff a divorce from Defendant pursuant to a Final Decree that incorporated a Marital Dissolution Agreement ("MDA"). [*See* Trial Ex. 1.] The MDA, which was signed by the parties on July 5 and 6, 2017, including the following:

> (A) The Defendant had recently purchased a 2016 Toyota 4 Runner which she customarily drove but which has since been turned over to the Plaintiff for him to tender back to the dealer from which it was purchased; the parties have agreed that each party will be responsible for half of the remaining debt owed for said vehicle (total amount remaining owed = $7,056.11[1]) which was not paid by the surrender of said vehicle. The Plaintiff will continue to be responsible for making payment on said debt balance, but the Plaintiff and Defendant will work agreeably

---

[1] Given the dispute between the parties relating to the vehicle debt, the Court finds it notable that the amount of the debt (i.e., $7,056.11) was hand-written in the blank provided in the typed document. [Trial Ex. 1 at ¶ 3(A).]

together to allow the Defendant to reimburse the Plaintiff monthly for the Defendant's one-half of said debt in such amounts as the Defendant can afford.

[Trial Ex. 1 at ¶ 3(A).]

Plaintiff explained that after the parties separated on January 14, 2017, he continued to pay monthly on the joint debt owed for the vehicle. When Defendant failed to reimburse him for the car payments, Plaintiff could no longer afford the monthly payments. He then arranged to sell the car back to Fox Toyota, but he had to obtain a $7,000.00 loan from Y-12 Federal Credit Union on May 19, 2017, to pay off the balance on the joint debt that remained after crediting the amount that Fox Toyota paid to buy back the car. [*See* Trial Ex. 6.] At trial, Plaintiff sought not only the $7,056.11 included in the MDA but also one-half of the monthly payments made by Plaintiff from January until the car was sold to Fox Toyota in May, which according to Plaintiff's testimony, were "$400 some odd per month."

Regarding the parties' residence, the MDA contained the following provision:

> (C) The parties also acknowledge that the former marital residence is presently under a contract for sale which when consummated will result in a "short sale" of the property, and both parties agree that this is apparently the best resolution of the marital real property they are able to accomplish. Any remaining balance on the mortgage or any other encumbrance upon the property for which they are both responsible shall henceforth be a debt owed by both parties equally, and the parties will likewise work agreeably with each other to arrange for the payment of each party's respective half of such encumbrance and/or mortgage balance so as to preserve as much as possible the good credit standing of the parties.

[Trial Ex. 1 at ¶ 3(C).]

The MDA also expressly addressed legal fees for its enforcement and dischargeability of the obligations created by the MDA. Specifically, the parties agreed to indemnify each other for legal fees incurred to enforce the MDA. [Trial Ex. 1 at ¶ 8(C).] Finally, the MDA contained the following language concerning dischargeability:

> **B. Non-dischargeability.** With respect to each party's responsibility for payment of certain debts and liabilities, and their obligation to hold the other harmless for the payment thereof, the parties understand and agree that their obligation is a nondischargeable debt under the Bankruptcy Code, this obligation being part of the final financial support settlement for both parties. Husband and Wife each agree that this Marital Dissolution Agreement evidences a stipulation by the parties to all facts necessary to a finding that any obligation for indemnification, payment of marital indebtednesses, and for payment of court costs created herein is an obligation in the nature of support, nondischargeable in Bankruptcy pursuant to 11 U.S.C. §523. The Husband and Wife each further agree that the entry of the Final Judgment of divorce in this cause shall constitute a finding and adjudication by a court of competent jurisdiction of the obligation's characterization as support and shall constitute *res judicata* and *collateral estoppel* as to the question of nondischargeability of the obligation in Bankruptcy. Specifically, each party acknowledges and deems it to be true as a matter of fact that neither of the parties individually is presently or foreseeably capable of paying the marital indebtednesses required to be paid under this Marital Dissolution Agreement without the full and equal participation of the other party in the payment thereof, and that if either party were required on their own to make payment of said marital indebtednesses without the full and equal participation in the payment thereof by the other party, neither party would be able to sustain self-sufficiency or support themselves. Accordingly, the obligation of each party to participate fully and equally in the payment of the marital indebtedness as herein elsewhere set forth substantially and meaningfully contributes to and is essential to the ability of the other party to support themselves. Accordingly, the obligation of each party to pay their designated share of marital indebtedness is in fact a support obligation of the parties vis a vis each other, and is deemed by each of the parties and by the court as a support provision in fact nondischargeable in Bankruptcy.

[Trial Ex. 1 at ¶ 4(B).]

In February or March 2016, the parties jointly obtained a loan for $18,757.00 from EnerBank USA ("EnerBank") for the sole purpose of repairing foundation issues – including sagging floors, damage from water buildup, and floor joints – and sealing the crawl space in order to make their house ready for sale. [*See* Trial Ex. 2.] As evidenced by the payment history through January 2018, Plaintiff made weekly payments of $62.00[2] on the EnerBank obligation

---

[2] Although Trial Exhibit 2 only reflects payments through January 11, 2018, Plaintiff testified that he has continued to make the weekly payments of $62.00, which, as of the trial date (September 13, 2018) totaled $5,394. Presumably, Plaintiff has continued to make the weekly payments since the trial date, such payments totaling an additional $1,116.00.

since the parties' separation in January 2017, at which time the balance was approximately $17,000.00. [Trial Ex. 2.] As of the trial date, Plaintiff had not received any reimbursement from Defendant on the EnerBank obligation. The MDA, which was drafted by Plaintiff's divorce counsel, is silent as to the EnerBank obligation, and Plaintiff could not explain why the MDA did not mention the EnerBank obligation.

Although the MDA acknowledged that the marital residence was under contract for a "short sale," the contract fell through, and the house did not sell until December 2017. To maintain the parties' good credit and prevent foreclosure, Plaintiff made monthly mortgage payments totaling $9,874.62 from the parties' separation in January 2017 until the house sold in December 2017. [Trial Ex. 3.] On December 14, 2017, the house sold for $104,000.00, which Plaintiff testified was a good price and enough to pay the $101,175.03 mortgage in full. Plaintiff alone paid the closing costs by withdrawing funds from his 401K account. [*See* Trial Ex. 4.] Plaintiff testified that he made the monthly payments to preserve the parties' good credit standing, as referenced in the MDA. As of the trial date, Defendant had not reimbursed Plaintiff for any part of the amounts paid by Plaintiff, notwithstanding the requirements of the MDA.

Defendant commenced her Chapter 7 bankruptcy case on November 8, 2017; however, Defendant did not list any obligation owed to Plaintiff in her statements and schedules, even though the parties executed the MDA on July 5, 2017, and the divorce was final on September 1, 2017. Plaintiff timely filed this adversary proceeding for a determination of dischargeability on April 6, 2018.

As asserted in the Statement of Issues, Plaintiff argues that he is entitled to a judgment in the total amount of $22,246.32 for one-half of the EnerBank loan to prepare the house for sale ($9,378.50); one-half of the Y-12 loan used to pay the deficiency on the vehicle ($4,528.29);

one-half of the mortgage payments to Mr. Cooper ($4,230.81); and one-half of the closing costs incurred when the house sold in December 2017 ($4,108.72), together with his attorneys' fees and expenses totaling $3,225.80 incurred to enforce the terms of the MDA. [Docs. 15, 20.]

Defendant did not testify but acknowledged at trial through counsel that she is obligated to Plaintiff for $3,528.06 relating to the vehicle (i.e., one-half of the amount of $7,056.11 recited in the MDA); $4,108.72 (i.e., one-half of $8,217.45) for closing costs paid at closing of the sale of the marital residence in December 2017; and Plaintiff's reasonable attorneys' fees[3] incurred in prosecuting this adversary proceeding.  She disputed, however, any obligation under the MDA for any of the additional financial obligations incurred by Plaintiff that were not expressly provided for in the MDA.  Specifically, Defendant disputes any liability to Plaintiff for the mortgage payments Plaintiff made between January and December 2017, any amounts related to the EnerBank loan, and any amount sought by Plaintiff relating to the vehicle that exceeds one-half of the $7,056.11 included in the MDA.

For the following reasons, the Court finds that Plaintiff is entitled to a judgment in the amount of $15,103.19 that is nondischargeable pursuant to 11 U.S.C. § 523(a)(15).

## II. ANALYSIS

The bankruptcy court possesses the jurisdiction to adjudicate both the validity of a claim and award damages. *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 792 (Bankr. E.D. Tenn. 2003) (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965 (6th Cir. 1993)).  Plaintiff seeks a determination that the debts he is owed by Defendant pursuant to the MDA are nondischargeable under § 523(a)(15), which provides, in material part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt— . . . to a . . . former spouse . . . and not of the kind described in paragraph (5) [for domestic support obligations] that is incurred by the debtor in

---
[3] Defendant does not dispute the reasonableness of Plaintiff's attorneys' fees.

>   the course of a divorce . . . or in connection with a . . . divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a government unit[.]

11 U.S.C. § 523(a)(15).[4]  Plaintiff bears the burden of proof by a preponderance of evidence that the debt falls within the scope of subsection (a)(15); however, post-BAPCPA, he is required to prove only that Defendant owes him a debt; that he is Defendant's spouse, former spouse, or child; that the debt is not a domestic support obligation covered by subsection (a)(5); and that the debt was incurred through a divorce decree or other court order. *Cooper v. Cooper (In re Cooper)*, Adv. No. 09-3068, 2010 WL 1992372, at *3 (Bankr. E.D. Tenn. May 18, 2010). Additionally,

>   based upon the plain language of subsection (a)(15) as it now reads, divorce-related debts that are not in the nature of alimony, maintenance, or support but have been awarded in connection with a divorce or separation, including joint debts subject to hold harmless agreements, are nondischargeable, and it is immaterial whether it would be a hardship upon the debtor to pay them.

*Id.*

As noted, because they were expressly named as obligations in the MDA, Defendant does not dispute that Plaintiff is entitled to a nondischargeable judgment under § 523(a)(15) for the payoff of the vehicle and the closing costs for the sale of the marital residence. Defendant also does not contest Plaintiff's right under the MDA to recover his attorneys' fees pursuant so that attorneys' fees and expenses totaling $3,225.80, as reflected in the Affidavit of Attorney's Fees filed by Plaintiff's attorney on September 21, 2018 [Doc. 20], are deemed undisputed. [*See* Trial Ex. 1 at ¶ 8(C).]

---

[4] Notwithstanding that paragraph 4(B) of the MDA purports to classify all obligations owed under it as "support," the parties do not dispute that the debts owed by Defendant to Plaintiff do not fall within the definition and scope of 11 U.S.C. § 523(a)(5).

Under the express terms of the MDA, the parties were to short-sell their residence, which was under contract as of July 2017 when the MDA was signed. Plaintiff testified that they were able to find a buyer willing to pay a good price, and they entered into a new contract to sell the house in November 2017, with the closing eventually occurring on December 13, 2017. Although the parties found a buyer and sold the house for a good price, to protect against foreclosure pending the sale, Plaintiff made monthly mortgage payments totaling $8,481.20 from the parties' January 2017 separation through December 2017 [Trial Ex. 3], when the house was finally sold, and he paid $8,217.45 in closing costs at the sale (using funds he withdrew from his 401K account). Thus, the Court finds that the mortgage-related payments by Plaintiff to "preserve as much as possible the good credit standing of the parties" [Trial Ex. 1 at ¶ 3(C)] total $16,698.65, of which Defendant is responsible for $8,349.33.

Plaintiff also made all monthly payments to EnerBank on the parties' 2016 loan obtained to repair the house so that it could be sold. Even though the uncontested testimony was that the debt was necessary for the repairs, the EnerBank debt was not identified in the MDA, which was drafted by Plaintiff's divorce counsel,[5] and the debt was not an "encumbrance upon the property" [Trial Ex. 1 at ¶ 3(C)]. *See* Black's Law Dictionary (10th ed. 2014) (defining encumbrance as "[a] claim or liability that is attached to property or some other right and that may lessen its value, such as a lien or mortgage; any property right that is not an ownership interest. An encumbrance cannot defeat the transfer of possession, but it remains after the property or right is transferred."). Thus, the Court rejects Plaintiff's request to hold Defendant liable for one-half of the debt to EnerBank.

---

[5] To the extent that the Court might construe the MDA provision at issue as ambiguous, "ambiguous contract provisions will be construed against the drafter of the contract." *Karsonovich v. Kempe*, No. M2017-01052-COA-R3-CV, 2018 WL 1091735, at *4 (Tenn. Ct. App. Feb. 27, 2018) (quoting *West v. Shelby Cty. Healthcare Corp.*, 459 S.W.3d 33, 42 (Tenn. 2014)).

Finally, because the MDA expressly included the dollar amount for the "remaining debt owed for [the] vehicle" as $7,056.11 [Trial Ex. 1 at ¶ 3(A)] and failed to reference any monthly payments made by Plaintiff until the vehicle was sold back to the dealer, the Court declines Plaintiff's request to increase the amount to which the parties expressly agreed in the MDA. Thus, Defendant's liability for the joint debt on the vehicle is limited to one-half of $7,056.11.

### III.  CONCLUSION

In summary, the Court will grant Plaintiff a nondischargeable judgment under 11 U.S.C. § 523(a)(15) for $15,103.19, consisting of one-half of the amount recited in the MDA as the remaining debt on the vehicle (i.e., $3,528.06); one-half of the monthly mortgage payments made by Plaintiff after the parties' separation (i.e., $4,240.60); and one-half of the closing costs paid by Plaintiff when the house sold in December 2017 ($4,108.73), as well as Plaintiff's attorneys' fees and expenses incurred to prosecute this adversary proceeding to enforce the MDA (i.e., $3,225.80).

An order consistent with this Memorandum will be entered.

FILED:  January 18, 2019

                BY THE COURT

                *s/ Suzanne H. Bauknight*

                SUZANNE H. BAUKNIGHT
                UNITED STATES BANKRUPTCY JUDGE